**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RODNEY PETERSON, | :: | CIVIL ACTION NO. |
| GDC ID # 955668, Case No. 475589, | :: | 1:10-CV-02488-TWT-GGB |
| Petitioner, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| RALPH KEMP, | :: | PRISONER HABEAS CORPUS |
| Respondent. | :: | 28 U.S.C. § 2254 |

**MAGISTRATE JUDGE'S ORDER
AND REPORT AND RECOMMENDATION**

Petitioner Rodney Peterson, a Georgia prisoner, challenges via 28 U.S.C. § 2254 the constitutionality of his November 8, 2007 convictions in the Superior Court of DeKalb County for aggravated assault and three lesser crimes. Now before the Court are his habeas corpus petition [1], with supporting brief and exhibits [1-1]; the response [4], with supporting brief [4-1] and exhibits [6-1–6-5]; the Motion of the Commissioner of the Georgia Department of Corrections to Intervene as a Party Respondent [5]; and Peterson's Rebuttal and Motion to Deem Respondent's Answer-Response Unreliable [7].[1] For the reasons set forth below, I **RECOMMEND** that the habeas corpus petition be **DENIED**.

---

[1] All document and page references, such as Doc. 6-5 at 29-34, are to the CM/ECF document and page numbers.

## I.  Procedural History

**A.      Trial Court Proceedings**

On January 4, 2006, Peterson was arrested in Detroit, Michigan, on outstanding arrest warrants issued in DeKalb County, Georgia, and on January 17, he waived extradition and was transported to the DeKalb County Jail. On January 30, he was returned to the Georgia state prison system after his parole was revoked on unrelated charges. (Doc. 1-1 at 4.) On February 9, 2006, a preliminary hearing was conducted before a DeKalb County magistrate judge, at which time Peterson was bound over on all of the charges set forth in his arrest warrants – aggravated assault of a police officer, possession of more than one ounce of marijuana, possession of a firearm by a convicted felon, possession of a firearm during the commission of a crime, and theft by receiving stolen property. (Id. at 7, 32, 58.)

Two police officers testified at the hearing. First, Officer Foy testified that he and his partner had come to a residence in DeKalb County to serve an arrest warrant on Peterson.[2] When they arrived, Peterson attempted to flee through the back sliding glass door. Foy and Peterson scuffled outside the residence, and Foy's head was injured. Foy then pepper-sprayed Peterson and attempted to handcuff him. Peterson

_____

[2] As indicated in the indictment, although not at the hearing, the events at issue occurred on December 9, 2005.

began to struggle again and got away from Foy, "and that's when [Foy] heard (three shots) and . . . was hit [in the] arm." Peterson escaped. (<u>Id.</u> at 33-34.) Foy saw the gun in Peterson's hand, although he could not describe it because he had blood and sweat in his eyes. (<u>Id.</u> at 36.) Foy had never seen Peterson before, but he later gave a positive identification of Peterson from a photograph. (<u>Id.</u> at 39-40.) There were no other eyewitnesses to the incident. (<u>Id.</u> at 38.)

Next, Detective Bryant, a DeKalb County police officer assigned to investigate the case, testified that investigators collected from the scene, among other things, two handguns, one containing three spent shell casings, and a large bag of marijuana. The marijuana and one of the handguns were found inside a jacket lying on the ground. (<u>Id.</u> at 41-42.) Peterson's father was the other occupant of the apartment where Officer Foy had attempted to arrest Peterson. The investigators obtained a search warrant for the apartment and discovered several handguns, at least two assault rifles, and a small bag of marijuana, most of which was found in a bedroom that also contained paperwork with Peterson's name on it. (<u>Id.</u> at 42-43.)

Peterson was eventually located in Detroit, Michigan, where federal marshals arrested him on January 4, 2006. Officer Bryant and a fellow officer traveled to

Detroit, where – after advising Peterson of his <u>Miranda</u>[3] rights, which he waived –
they took a statement from him. (<u>Id.</u> at 44.) At the hearing, Bryant paraphrased that
statement as follows:

> He [Peterson] stated that he was there the night the incident occurred –
> that he went out the door because he knew he had warrants on him but
> he didn't know what. He said he went outside the residence. That was
> when he confronted Sergeant Foy. He stated he tried to get away. A
> fight ensued. He stated Sergeant Foy sprayed him with pepper spray at
> which time he pulled away. He said . . . he did have a handgun in his
> pocket which was a revolver. He said it was sticking in his back. He said
> he tried to remove the revolver and it went off.

(<u>Id.</u>) Officer Bryant acknowledged that there was no audio or video recording of the
statement and that he, not Peterson, had written the statement, although Peterson had
signed it. (<u>Id.</u> at 51-52.) Bryant also acknowledged that a police officer had written
the statement that Peterson's father had signed. (<u>Id.</u> at 54.) There were no other
witnesses to the incident at issue – although neighbors had heard shots fired, none
had seen anything. (<u>Id.</u>)

On April 6, 2006, a DeKalb County grand jury returned an indictment against
Peterson, charging him on five counts arising from the events of December 9, 2005:
(1) aggravated assault with a handgun, a deadly weapon, upon Officer Foy, whom
Peterson knew to be a police officer engaged in his official duties; (2) obstruction of

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Officer Foy in the performance of his official duties, to wit, struggling with him and causing him to strike his head on the ground; (3) a violation of the Georgia Controlled Substances Act, to wit, the possession of more than one ounce of marijuana; (4) possession of a firearm during the commission of a crime; and (5) possession of a firearm by a convicted felon. (Doc. 6-5 at 29-34.)

At the pretrial calendar call on November 8, 2007, Peterson pleaded guilty to counts one, two, three, and five.[4] The state nolle prossed count four. Peterson received a sentence of twenty years, fifteen to serve in prison, including credit for time served since January 3, 2006. (Id. at 72-78; see id. at 26.) At the plea hearing, Jennifer Mann, Peterson's attorney, explained that "Peterson did make a statement wherein he implicated himself; and, actually, he admitted to a lot of the allegations in the case. However, his contention has always been that he didn't intend to shoot the officer. He was being tackled, he was pepper sprayed, he was struggling and the gun went off." (Id. at 73-74.) Mann stated that she and Peterson had "gone over this extensively" and that she had advised him to plead guilty because he likely would not succeed at trial. (Id. at 74.)

_____

[4] As noted below, Peterson had been prepared to plead guilty in or around July 2006, but he had failed to proffer a guilty plea at that time. (See Doc. 6-5 at 12.)

AO 72A
(Rev.8/82)

The trial court then elicited the following responses from Peterson: *his lawyer had explained the charges to him*; he understood that by pleading guilty he was giving up his right to a jury trial and all of the associated rights, including the presumption of innocence, the right to subpoena and question witnesses, and the right to testify on his own behalf or to keep silent and avoid possibly incriminating himself; he had not received any threats or promises that had influenced his decision to plead guilty; he was satisfied with the services and advice of his attorney; he understood that his maximum sentence on the charges against him was forty years and that the court need not accept the state's recommendation for a lesser sentence; he was, in fact, guilty; and he wanted to plead guilty. Peterson signed a written statement acknowledging that the foregoing responses, given under oath, were true and correct. (<u>Id.</u> at 75-78; <u>see</u> <u>id.</u> at 27-28.) Peterson did not file a direct appeal.

## C.      State Habeas Petition

Proceeding *pro se*, Peterson filed a state habeas petition, alleging that (1) "counsel failed to raise speedy trial demand on production order" and "the state failed to timely bring [him] to trial in compliance with his speedy trial demand"; (2) counsel did not object to the trial court's failure "to ascertain" the factual basis for his plea on the record, and the trial court failed to satisfy itself regarding the factual basis for the plea and whether Peterson had a "clear understanding . . . as to what the

6

charges actually were"; (3) counsel failed to advise him that reckless conduct is a lesser included offense of aggravated assault with a deadly weapon; and (4) counsel did not object "that the record did not disclose" that his guilty plea was knowing and voluntary, and the court accepted his plea "without [an] affirmative showing that it was intelligent and voluntary." (Doc. 6-1 at 6.)

At the state habeas evidentiary hearing, under questioning by Peterson, Mann testified that she recommended that he plead guilty because "in [his] statement [he] admitted to crimes that exceeded the twenty do fifteen that the D.A.'s Office was recommending." (Doc. 6-5 at 6.) When Peterson asked Mann why she did not object to the lack of a factual basis for his plea, Mann replied:

> There was a factual basis on the record. When I first met you, when you were brought back from the State system for arraignment in July of '06, at that point in time, I did talk to you about the case and you were going to enter a guilty plea and then you decided not to, but we had gotten to the point of the plea colloquy with the Court, so the Court had already heard a factual basis. . . . The second factual basis came at the Motion to Suppress hearing when the officers testified. There was more of a factual basis at that point in time.

(Id. at 12.)

Peterson also asked Mann why she had not explained to him before entering his plea that reckless conduct was a lesser included offense to aggravated assault with a deadly weapon. Mann replied that they had gone over this "several times" because

7

it had always been Peterson's contention that what he had done constituted reckless conduct. Mann testified that she explained to Peterson that whether or not the jury received an instruction on lesser included offenses would be a decision for the trial court at the close of the evidence. (Id. at 14-15.) In response to Peterson's query about whether the face of the record showed that he understood the elements of the crimes to which he was pleading guilty, Mann testified that it was her "understanding that [Peterson] knew exactly what [he was] doing" when he pleaded guilty. (Id. at 16.) On cross-examination, Mann testified that she had discussed with Peterson the charges against him and the evidence that supported those charges. (Id. at 17.)

Peterson took the witness stand and, after swearing to tell the truth, stated, among other things, the following:

> I'd like to say that on the face of the record, while I was going through being tackled by the officer and being pepper sprayed, me gagging of the pepper spray, yeah, I was aware that I had a weapon on me and when I fired the weapon I never . . . . fired the weapon at the officer, period. I fired the gun. I don't know either – I couldn't even tell you how the officer got shot because I couldn't see. I was blinded from the pepper spray and pretty much gagging.

(Id. at 22-23). Relying on Mann's testimony, the state habeas court denied all four of Peterson's claims. (See Doc. 1-1 at 62; Doc. 6-3 at 3-5.) The Georgia Supreme Court denied Peterson's application for further review. (Doc. 6-4.)

8

**D.      Federal Habeas Petition**

Again proceeding *pro se*, Peterson filed the federal habeas petition now before the Court, raising the following grounds for relief: (1) ineffective assistance of counsel; (2) his guilty pleas were coerced, in violation of his due process rights; (3) he was denied his right to a fast and speedy trial; and (4) his detention is unlawful because he is actually innocent of the charges against him, as he was in Detroit, Michigan, when the alleged crimes occurred. (Doc. 1 at 5-6.)

## II.  Standards of Review

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. <u>See</u> 28 U.S.C. § 2254(a). This power, however, is limited.

**A.      Procedural Default**

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court, i.e., a claim "*not* resolved on the merits in the state proceeding" based on an "independent and adequate state procedural ground." <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977). <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (noting that if (a) petitioner failed to exhaust state remedies and (b) state courts would now find his claims procedurally barred, "there is a

procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims").

This bar to federal habeas review may be lifted if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law, or (2) a fundamental miscarriage of justice, i.e., that he will remain incarcerated despite his actual innocence unless the federal court considers his defaulted claim. See Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 488-89, 495-96 (1986). In the guilty plea context, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotations omitted).

Under Georgia law, claims not raised in an initial state habeas petition in Georgia generally may not be raised in a successive petition. See O.C.G.A. § 9-14-51 (providing that "[a]ll grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised . . . in his original or amended petition," and "[a]ny grounds not so raised are waived . . . ."); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) (stating that O.C.G.A. § 9-14-51 "can and should be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question could not

10

reasonably have been raised in the original or amended state habeas petition")
(quotation and alteration marks omitted).

## B.    Merits Review

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless that adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's determination of a factual issue is presumed correct unless the habeas petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In Williams v. Taylor, 529 U.S. 362, 412 (2000), the Supreme Court explained that, in applying 28 U.S.C. § 2254(d), a federal habeas court first ascertains the "clearly established federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." The federal habeas court then considers whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set

11

of facts that are materially indistinguishable from" those in a Supreme Court decision "and nevertheless arrives at a result different from" that decision. <u>Id.</u> at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then considers whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The touchstone of this inquiry is whether the state court's application of federal law is "objectively" unreasonable. <u>Id.</u>. at 409. A federal habeas court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411. Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "imposes a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Stephens v. Hall</u>, 407 F.3d 1195, 1202 (11th Cir. 2005) (internal quotations omitted). "Even clear error, standing alone, is not a ground for awarding habeas relief." <u>Id.</u> <u>See also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) (stating that "question under AEDPA is not

whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold").

I have reviewed the pleadings and exhibits and find that the record contains sufficient facts upon which the issues properly may be resolved. As Peterson has not made a showing sufficient under 28 U.S.C. § 2254(e) to warrant a federal evidentiary hearing, the case is now ready for disposition.

## C.   The Law of Ineffective Assistance of Trial Counsel

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." <u>Id.</u> at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." <u>Id.</u> First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." <u>Id.</u> at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered

13

sound trial strategy." <u>Id.</u> (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion–though the presumption is not insurmountable–is a heavy one." <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability" – one "sufficient to undermine confidence in the outcome" – that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

### III. Discussion

**A.    Ground One:  Ineffective Assistance of Counsel**

Peterson claims that he is entitled to relief on his ineffective assistance claims if counsel "for example has failed to investigate the case, interview the State's witnesses, and gather sufficient intelligence on the case," thereby rendering herself unable to "provide [her] client with intelligent advice regarding his plea," which, in turn, means that his "guilty pleas cannot possibly be knowingly and intelligently entered." (Doc. 1-1 at 17.) Peterson claims that he "was also prejudiced by Counsel's erroneous advice regarding an Appeal" because counsel wrongly advised him that he could not appeal after pleading guilty in open court. (<u>Id.</u> at 18.)

14

As noted above, in state court Peterson alleged only that trial counsel was ineffective for failing to present his speedy trial demand to the court, advise him regarding a lesser included offense to the aggravated assault charge, and object to the trial court's failure to insure that there was a factual basis on the record to support his plea and to affirm that his plea was knowing and voluntary. Although Respondent argues, with some justification, that Peterson has procedurally defaulted all of his federal habeas grounds for relief (Doc. 4-1 at 2-4), I construe Peterson's state court lesser-included-offense and factual-basis claims as similar enough to his first federal ground for relief to conclude that this ground is not procedurally defaulted.[5] Nevertheless, Peterson has offered no evidence demonstrating that the state habeas court erred in relying upon the hearing testimony of Peterson's trial counsel that she was thoroughly familiar with the state's case against Peterson and that she often discussed with him the possibility of a jury instruction on reckless conduct as a lesser included offense to the aggravated assault charge. (See Doc. 6-5 at 7-8, 12-17.)

---

[5] In fact, given Peterson's *pro se* status, I construe the bulk of all three of his substantive claims as alleging errors based on the ineffective assistance of his trial counsel, claims that he raised in one form or another in the state habeas proceedings. However, Peterson did not allege in state court that his trial counsel had given him erroneous advice regarding his ability to file a direct appeal, and, therefore, that specific claim is procedurally defaulted. See Coleman, 501 at 735 n.1, 750; Chambers, 150 F.3d at 1327.

15

Peterson purports to rely upon the testimony at his preliminary hearing as support for his ineffective assistance claims, arguing that the police officer whom he allegedly shot never saw him holding a gun and could not identify him as the assailant, that there was no physical evidence – such as fingerprints – connecting him to the firearms and marijuana found at the scene and in the apartment where he allegedly was living, and that the police fabricated his and his father's statements and then coerced them into signing those statements. (Doc. 1-1 at 7-13.) However, Peterson's attempts to cast doubt upon the evidence against him fail because of his own testimony, under oath, at the state habeas hearing, when he admitted that he had struggled with Officer Foy and had shot him, although he asserted that he had done so inadvertently. (See Doc. 6-5 at 22-23.) That testimony is consistent with Peterson's statement to the police, written out by Detective Bryant in Detroit, and with trial counsel Mann's account of Peterson's own interpretation of the events at issue and

16

of his desire to seek a reckless-conduct jury instruction.[6] (See Doc. 1-1 at 44; Doc. 16-5 at 14-15.) Ground one of Peterson's federal habeas petition fails.

**B.     Ground Two:  Coerced Guilty Pleas**

Peterson argues in support of his ground two claim that he was not given proper notice of the nature of the charges against him and that, without such notice, his guilty plea was not knowing and voluntary. (Doc. 1-1 at 18-21.) "Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." Finch v. Vaughn, 67 F.3d 909, 914 (11th Cir. 1995) (internal quotations omitted). To satisfy due process, a defendant's waiver of the constitutional rights associated with a criminal trial must be voluntary and knowing. Id. (stating that "[f]or a guilty plea to be entered knowingly and intelligently, the defendant . . . must be reasonably informed of the nature of the charges against him [and] the factual basis underlying those charges . . . .") (internal quotations omitted). "[A] plea cannot . . . . be voluntary in the sense that it constituted an intelligent admission that [the

---

[6] Peterson's sworn habeas hearing testimony also forecloses any suggestion that the Court should excuse the procedural default of his claim regarding counsel's appellate advice because he is actually innocent of his crimes of conviction, based on his allegation that effective counsel could have "proven via witnesses and work records that [he] was actually a thousand miles away in Detroit, Michigan, at the time this alleged shooting occurred." (See Doc. 1-1 at 21 *et seq.*)

17

defendant] committed the offense unless [he] received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Henderson v. Morgan, 426 U.S. 637, 644-45 & n.13 (1976) (noting that "[a] plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt") ((internal quotations and citation omitted).

Evidence that an accused entered his guilty plea knowingly and voluntarily includes "[s]olemn declarations in open court," which "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-75 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," but also noting that "the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment"). A defendant's

18

> guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, including the elements of the . . . charge to which he pleaded guilty. A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid.

Bradshaw v. Stumpf, 545 U.S. 175, 182-83 (2005) (citation and internal quotations omitted).

In rejecting Peterson's arguments in state court that he "did not have a clear understanding of the charges against him" and that there was no "affirmative showing that the plea of guilty was made intelligently and voluntarily," the state habeas court found that "the record reflects and counsel testified that [Peterson] entered his guilty plea freely and voluntarily," that counsel "advised [him] of the charges against him," and that "there was a factual basis for the court to accept [his] plea." (Doc. 6-3 at 3.) Although the trial court did not specifically address the elements of Peterson's offenses at the plea hearing, it was not required to do so.[7] The Supreme Court "has

---

[7] Federal Rule of Criminal Procedure Eleven requires that a federal district court address the defendant personally and openly to "ensure that the defendant understands . . . the nature of [the] charge to which [he] is pleading" and "that a sufficient factual basis exists on the record for the plea." United States v. Adams, 448 F.3d 492, 498 (2nd Cir. 2006). However, these Rule 11 requirements do not apply to a state sentencing proceeding. See Gaddy v. Linahan, 780 F.2d 935, 943 (11th Cir.

never held that the judge must himself explain the elements of each charge to the defendant on the record." <u>Bradshaw</u>, 545 U.S. at 183. Rather, a guilty plea is valid "where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." <u>Id.</u> The record here reflects that Mann did explain to Peterson the nature of the crimes charged against him and the elements of those crimes, and Peterson acknowledged in open court that this was so. (<u>See</u> Doc. 6-5 at 12-17, 27-28, 72-78.)

At least implicit in the state habeas court's ruling, if not explicitly stated, is its finding that Peterson was adequately informed of the nature of the charges and of the elements of the offenses to which he pleaded guilty. The state habeas court's findings of fact, both explicit and implicit, are presumed correct, and Peterson has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. 2254(e)(1); <u>see</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432-34 (1983) (trial judge's legal conclusion that defendant's guilty plea to previous charge was admissible into evidence contained implicit factual determination that defendant's testimony that he had not been given opportunity to review indictment for charged offense lacked credibility). Peterson has failed to offer the required rebuttal.

─────────────────

1986) (noting that "Rule 11 is not binding on the states").

Moreover, there was nothing complicated or unusual about the nature of the four charges to which Peterson pleaded guilty. In count one, he was charged with aggravated assault with a deadly weapon upon a police officer, i.e., with shooting at him.[8] In count two he was charged with obstructing the officer, i.e., with interfering with the officer's attempt to arrest him on an outstanding warrant.[9] In counts three and five, he was charged with simple possession of marijuana and of a firearm.[10] The record before this Court does not reflect that Peterson ever expressed any uncertainty about the nature of these charges, no doubt because their elements are largely self-defining within common experience and with a basic understanding of the English language.

---

[8] See O.C.G.A. § 16-5-21(a) (defining aggravated assault as, among other things, assault with a deadly weapon); O.C.G.A. § 16-5-20(a) (defining simple assault as "[a]ttempt[ing] to commit a violent injury to the person of another" or "[c]ommit[ting] an act which places another in reasonable apprehension of immediately receiving a violent injury").

[9] See O.C.G.A. § 16-10-24(b) (defining felony "[o]bstructing or hindering law enforcement officers" as "knowingly and willfully resist[ing], obstruct[ing], or oppos[ing] any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer").

[10] See O.C.G.A. § 16-13-30(j)(1) (making it "unlawful for any person to possess [or] have under his control . . . marijuana"); O.C.G.A. § 16-11-131(b) (providing that "[a]ny person . . . who has been convicted of a felony by a court of this state . . . and who . . . possesses . . . any firearm commits a felony . . . .").

21

In sum, the record in this case, including Peterson's oral and written acknowledgments at the plea hearing, shows that Peterson understood the nature of the charges to which he pleaded guilty. The state habeas court's determination to that effect is neither clearly erroneous nor contrary to federal law. There simply is insufficient evidence to support a finding that Peterson's guilty plea was "so much the product of . . . misunderstanding . . . or misrepresentation . . . as to make [it] a constitutionally inadequate basis for [his] imprisonment." See Blackledge, 431 U.S. at 75. Peterson's ground two claim fails.

## C.    Speedy Trial

Peterson next argues that, but for counsel's ineffectiveness, the charges against him would have been dismissed due to a violation of the speedy trial provisions of O.C.G.A. § 17-7-170 and O.C.G.A. § 42-6-3.[11] Peterson states that on March 13, 2007, he filed a *pro se* motion asking the court to appoint substitute counsel – apparently, to replace Mann because she kept pressuring him to plead guilty – and also, on that same date, he filed a Demand for Trial. Peterson claims that, although the court ignored the motion for substitute counsel, "the clock was still ticking on

---

[11] O.C.G.A. § 42-6-3 involves the speedy trial rights of a prisoner against whom a detainer has been lodged and, for that reason, is not relevant here.

[his] <u>Demand</u> <u>For</u> <u>Trial</u>." Therefore, argues Peterson, had Mann inquired and verified the Demand for Trial "when she came back on the case," instead of ignoring Peterson's requests that she do so, the charges against him would have been dismissed. (Doc. 1-1 at 25-26.)

Mann testified at the state habeas hearing that she never received a copy of Peterson's *pro se* Demand for Trial, but she "did receive the Judge's order denying [Peterson's] pro se motions on the ground that [he was] currently represented by counsel. So, [Mann] never had any personal knowledge that [Peterson] filed a pro se motion for a demand for trial." (Doc. 6-5 at 8-9.) Based on that testimony, the state habeas court denied Peterson's allegation that "counsel failed to make a speedy trial demand" because Peterson "never requested that she make such a demand." (Doc. 1-1 at 62.) Peterson argues that he "was not asking Counsel to file a Fast and Speedy Trial Motion for him," because he had done that already when he fired her from the case. Rather, he was asking her to inquire about the status of his speedy trial demand. Her only answer was that she knew nothing about any such demand, which is the same answer she gave at the state habeas hearing, one that was not responsive to his inquiries either during the pretrial proceedings or at the hearing. (Doc. 1-1 at 25-26.)

23

Section 17-7-170 of the Georgia Code provides as follows:

> Any defendant against whom a true bill of indictment or an accusation is filed with the clerk for an offense not affecting the defendant's life may enter a demand for speedy trial at the court term at which the indictment or accusation is filed or at the next succeeding regular court term thereafter; or, by special permission of the court, the defendant may at any subsequent court term thereafter demand a speedy trial.

O.C.G.A. § 17-7-170(a). "If the defendant is not tried when the demand for speedy trial is made or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try the defendant, the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation." Id. § 17-7-170(b).

There are two problems with Peterson's speedy trial claim. First, there is no evidence that he was authorized to file a *pro se* motion in his criminal case while Mann was still representing him, as he acknowledged during the habeas hearing that she was. (See Doc. 6-5 at 9, where Peterson asked Mann, "At the time frame of the filing of this demand for speedy trial, were you still my counsel on the record?" and Mann responded that she was.) Second, Peterson did not "file" his demand for speedy trial until well after the March 2006 term of court during which he was indicted (see Doc. 6-5 at 34) and the court term immediately thereafter, so that he was required to

24

obtain "special permission of the court" to file a demand for speedy trial in March 2007. See O.C.G.A. § 17-7-170(a). There is no indication in the record that Peterson obtained this permission, nor any indication that the trial court would have granted it had trial counsel applied. In any event, Peterson is not alleging that trial counsel was ineffective for not filing a speedy trial demand, but only for not following up on his own *pro se* demand. However, there is no indication in the record that any such demand was ever filed properly in the Superior Court of DeKalb County prior to Peterson's guilty plea. Therefore, Peterson's ground three claim fails.

**D.     Ground Four: Actual Innocence**

As noted above, Peterson claims that he is actually innocent because he was in Detroit when the incident at issue occurred. However, Peterson's own statement to the police and his own sworn testimony at the state habeas hearing belie this claim. Moreover, having presented no evidence of his actual innocence, Peterson has not "demonstrate[d] that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." See Bousley, 523 U.S. at 623. Therefore, Peterson's federal habeas petition is due to be denied in its entirety.

25

## IV.  Certificate of Appealability

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition. 28 U.S.C. § 2253(c)(1)(A). This Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rule 11(a) of the Rules Governing Section 2254 Cases (also providing that "[i]f the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v . McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (citing Miller-El v. Cockrell, 537 U.S. 322, 337, 342 (2003)).

I find that none of Peterson's claims deserves encouragement to proceed further and conclude that a COA should not issue in this matter.

### V. Conclusion

For the foregoing reasons, I **RECOMMEND** that the Court **DENY** Peterson's petition for a writ of habeas corpus [1], **DISMISS** this action, and **DENY** Peterson a certificate of appealability.

The Motion of the Commissioner of the Georgia Department of Corrections to Intervene as a Party Respondent [5] is **GRANTED** *nunc pro tunc*, and Peterson's Motion to Deem Respondent's Answer-Response Unreliable [7] is **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**IT IS SO ORDERED AND RECOMMENDED** this 11th day of April, 2011.


GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

27